IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**REBECCA LYNN BUMGARDNER**                                                                  **PLAINTIFF**

v.                                                                                                   No. 1:24CV153-SA-JMV

**SHERIFF EDDIE HAWKINS, ET AL.**                                                            **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Rebecca Lynn Bumgardner, who challenges the conditions of her confinement under 42 U.S.C. § 1983. That statute provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when she filed this suit.[1] The plaintiff alleges that the defendants, together and separately, violated her constitutional rights regarding the events surrounding several arrests.

The court issued an order [20] for the plaintiff to show cause why the instant case should not be dismissed for failure to state a claim upon which relief could be granted. The order [20] also provided the plaintiff an opportunity to better flesh out the factual allegations in support of her claims. The plaintiff moved [21] to amend her complaint; then also moved [23] to extend the deadline to respond to the court's order [20] to show cause. The plaintiff again moved [24] to amend her complaint in response to the court's show cause order [20]. The court will grant the plaintiff's motions [21], [24] to amend and has considered the substance of the attached proposed complaint in reaching its conclusion. Further,

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (holding that the PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

as the plaintiff's proposed amended complaints address the court's show cause order, the court will dismiss the plaintiff's motion [23] to extend the show cause order response deadline as moot.

The plaintiff's allegations are lengthy and not fully in chronological order. As such, the court has created a timeline to clarify the allegations as much as possible. The court will then summarize the plaintiff's six claims for relief arising out of those allegations. The court's discussion of those claims will follow, and, lastly, the court will discuss the disposition of the case as to each individual defendant. For the reasons set forth below, the instant case will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

**Factual Allegations**

As noted above, the court has constructed a chronology of the plaintiff's factual allegations in this case. The plaintiff's most recent amended complaint includes a timeline; however, based upon her earlier pleadings, there appear to be gaps in the sequence of events. As such, the court has filled those gaps with allegations from earlier pleadings, when necessary for the sake of clarity and completeness. *See generally* Docs. 8, 9, 10, 19, 21, and 24 (plaintiff's complaint, supplements, and amended complaint).

**Traffic Stop of August 24, 2022**

On August 24, 2022, plaintiff Rebecca Lynn Bumgardner was out of custody on a $3,700 bond after her arrest on three charges for sale of methamphetamine. Doc. 24-1, p. 3 ($3,700 bond); *Bumgardner v. State of Mississippi*, No. 2024-KA-00090-COA (memorandum opinion of 10/28/2025) (arrest for sale of methamphetamine).[2] On that day, Lowndes County Sheriff's Department Officers Jeff Edmondson, Lance Luckey, and Mark McGarity conducted a traffic stop. Doc. 24-1, p. 3.

---

[2] The court takes judicial notice of prior proceedings involving the plaintiff, both state and federal. *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976).

Bumgardner was recording their actions on her cellular phone at the time. *Id*. The officers conducted a search, arrested her, and confiscated her phone.[3] *Id*. According to the plaintiff, they had neither a warrant nor probable cause to arrest her and seize her phone. *Id*. She was soon released on a $200 bond. *Id*.

Bumgardner attempted to retrieve her phone from the Sheriff's Department but was denied. *Id.*, p. 3-4. Nor was her attempt to resolve the matter in Justice Court successful. *Id.*, p. 4. On November 1, 2022, she served the Sheriff's Department with a Notice of Intent to Sue. *Id*. She requested and received body cam footage of the traffic stop, and, on November 15, 2022, she posted the video footage on her YouTube channel. *Id*. She believes that posting the videos and commentary critical of the Sheriff's Department caused the defendants to retaliate against her with future arrests.

## Witness Intimidation Charge

Investigator Jeff Edmondson directed confidential informant ("CI") Tonya Blanton to "do a job" for him – and to enlist the help of Georgina Slayton. Doc. 9, p. 1; Doc. Doc. 24-1, p. 4. On November 17, 2022, Blanton sent a text message to Slayton to that effect, and Slayton responded that she was ready. Doc. 9, p. 1; Doc. 24-1, p. 4. The next day (November 18, 2022), Slayton called Scotty Brown (private citizen) and told him to send a text to Christopher Stokes' phone – a request for Stokes and Bumgardner to walk to Slayton's home.[4] Doc. 9, p. 2. Blanton and her boyfriend, Matthew Moore, were there, were waiting in Slayton's driveway, and Slayton was not at home. Doc. 24-1, p. 4. As a result of this meeting, Blanton (who was a potential witness in Bumgardner's methamphetamine

---

[3] Bumgardner's allegations do not identify the charge arising out of the traffic stop that led to her arrest. Nor do they include the location of the stop – or a description of the events leading up to the stop, the nature of the search conducted, whether the search revealed other items or statements, or any other details to support her claims. She merely offers the bare allegation that the search and seizure were "without a warrant or probable cause." Doc. 24-1, p. 3.

[4] Stokes was plaintiff's boyfriend at the time.

possession case) accused Bumgardner of attacking and intimidating her. Doc. 9, p. 5; Doc. 24-1, p. 5. Tonya Blanton, Matthew Moore, and Meghan Slayton[5] then gave statements to the police, alleging that Bumgardner had screamed at Blanton, then attacked and threatened her, choked her and kneed her in the thigh. Doc. 24-1, p, 5; Docs. 19, 19-1 through 19-3. Law enforcement officers verified a bruise, which was visible on Blanton's thigh – and left "an extremely noticeable contusion[] that was easily felt even through Blanton's pants leg." Doc. 19, p. 2. She believes that defendants Blanton, Slayton, and Brown (private citizens) conspired with Investigator Edmondson to lure her to Slayton's house in order levy the false charge of intimidating a witness in her pending criminal case (on the charge of sale of methamphetamine). Doc. 9, p. 2.

Based upon the three witness statements, as well as the police report, the Justice Court judge issued a warrant (on the charge of intimidating a witness) for Bumgardner's arrest on November 22, 2022, which was executed that day. *Id*. A notation on the warrant regarding the amount of bond reads, "No bond until initial [appearance]." Doc. 19-5, p. 2. As a result of her arrest, her bond (on the earlier sale of methamphetamine charge) was revoked at her November 23, 2022, initial appearance (for the intimidation charge), and she forfeited the $3,700 bond. Doc. 24-1, p. 5.

Bumgardner spent six months in pretrial detention on the bond revocation on her sale of methamphetamine charge – from November 2022 (the day of her arrest for intimidation) until May 26, 2023 (the date of her conviction on the sale of methamphetamine charges). *See* Doc. 9, p. 5 (arrest date, intimidation); *Bumgardner v. State of Mississippi*, No. 2024-KA-00090-COA (memorandum opinion of 10/28/2025) (conviction date, sale of methamphetamine). Her preliminary hearing on the

---

[5] The plaintiff refers to both *Georgina* Slayton and *Meghan* Slayton in her pleadings, and *Megan* Slayton was one of the people who provided witness statements to the Sheriff's Department. It is unclear whether Georgina and Meghan (or Megan) are the same person or two (or three) different people. However, this discrepancy does not affect the outcome of this case.

intimidation charge took place on January 17, 2023. Doc. 19-9, p. 3.

She was initially indicted on the intimidation charge on January 30, 2023. Doc. 24-1, p. 5. According to Bumgardner, the intimidation charge was "voluntarily dismissed" two days later on February 1, 2023, but she was nonetheless indicted on that charge a second time on April 24, 2023. Doc. 24-1, p. 5. On May 26, 2023, she was convicted by a jury for three counts of sale of methamphetamine. *Bumgardner v. State of Mississippi*, No. 2024-KA-00090-COA (Miss. Ct. App.) (memorandum opinion of 10/28/2025). On November 6, 2023, some four months after her conviction for the three counts of sale of methamphetamine, the witness intimidation charge was dismissed. Doc. 24-1, p. 5.

### Retaliation Against a Public Servant

A critical detail regarding Bumgardner's claim regarding the charge of retaliation against a public servant is that *her detention was not based upon the retaliation charge*. Instead, her detention arose out of the revocation of her bond as to the charge of sale of methamphetamine.

As set forth above, on November 23, 2022, the day after her arrest for witness intimidation, Bumgardner made an initial appearance on that charge before the Lowndes County Justice Court.[6] Doc. 8, p. 8. As a result of her arrest for intimidation, her bond on the methamphetamine charge was revoked, and was she was detained *on the methamphetamine charge* for six months – from her arrest for

---

[6] Under Miss. R. Cr. P. 5.2, which governs initial appearances, if the defendant was arrested without a warrant, then the court must make a probable cause determination. As such, probable cause was established both by the Judge issuing a warrant – and by the Judge during the initial appearance. As Bumgardner was arrested for witness intimidation pursuant to a warrant (Doc. 19, p. 2.) – was not released after her initial appearance (Doc. 24-1, p. 5) – and forfeited her bond (as to the sale of methamphetamine) (*id*., p. 3, 5), the state court clearly found probable cause (twice) to arrest and detain her for the crime of witness intimidation. Though the court could have ordered her detention based upon the intimidation charge, it chose, instead, to revoke her bond and have her detained on the sale of methamphetamine charge.

intimidation on November 22, 2022, until her conviction for sale of methamphetamine on May 26, 2023. *See* Doc. 9, p. 5 (detained for six months after November 22 arrest); *Bumgardner v. State of Mississippi*, No. 2024-KA-00090-COA (memorandum opinion of 10/28/2025) (convicted on May 26, 2023).

After Bumgardner's November 23, 2022, initial appearance on the intimidation charge, Lowndes County Officers Kevin Pevey and Marie Halthorn were transporting her back to the jail, and Bumgardner said that she intended to sue Investigator Edmondson and take his "house, car, [and] freedom." Doc. 8, p. 8. Edmondson was not present at the time. *Id.*

On January 30, 2023, Bumgardner was indicted on the charge of retaliation against a public servant.[7, 8, 9] Doc. 24-1, p. 5. It is not clear when she was charged with retaliation; nor is it clear whether or when she demanded a preliminary hearing as to this charge.[10] On February 1, 2023, Edmondson came to the Lowndes County Jail, "flashed" a paper (the January 30, 2023, Indictment) at Bumgardner, and told her that she was being charged with retaliation. Doc. 8, p. 8. At the time (February 8, 2023), she did not know why she was being charged – but later discovered that Pevey and Halthorn had stated

---

[7] Bumgardner believes that the indictment is a "fraudulent instrument" created by the Sheriff, rather than the Grand Jury, District Attorney, and the state court. She bases her belief on faint text stamped on the indictment reading "Sheriff Eddie Hawkins." The presence of such a stamp does not lead to the inference of a falsified Indictment, and Bumgardner offers only her personal belief to support this allegation.

[8] Earlier in these proceedings, Bumgardner alleged that a Grand Jury indicted her on the retaliation charge on March 10, 2023; however, the precise date of indictment does not alter the outcome of this case.

[9] Once Bumgardner was indicted on the retaliation charge, she was no longer entitled to a preliminary hearing. *See* Miss. R. Crim. P. 6.1. ("[A] defendant who has been indicted by a grand jury is not entitled to a preliminary hearing.").

[10] There is a 14-day period following a defendant's demand for a preliminary hearing to hold one; otherwise, a defendant must be released on her own recognizance (unless she meets one of the criteria to preclude the necessity of the hearing or to delay it). Miss. R. Crim. P. 6.1. In this case, however, Bumgardner was already detained on other charges (sale of methamphetamine). As such, her continued detention was not based upon the retaliation charge – and thus did not prejudice her.

that, on the drive back from her initial appearance, she had threatened to kill Edmondson. *Id.* According to Bumgardner, she did not have an initial appearance on the retaliation charge. *Id.* However, as stated above, she was already being detained on the methamphetamine charge when she was indicted for retaliation. *Id.* at 5. On May 26, 2023, she was convicted by a jury for three counts of sale of methamphetamine and sentenced to a total of 24 years' incarceration. *Bumgardner v. State of Mississippi*, No. 2024-KA-00090-COA (memorandum opinion of 10/28/2025). According to the Mississippi Department of Corrections (MDOC) website, she entered MDOC custody eleven days later, on June 6, 2023. *See* https://www.mdoc.ms.gov/ inmate_search/getDetails/152125. The charge of retaliation against a public servant was dismissed five months later on November 6, 2023. Doc. 24-1, p. 5.

## The Plaintiff's Legal Claims

In this case, most of Bumgardner's claims arise out of her contention that her arrest and detention for the crimes of witness intimidation and retaliation against a public servant were not supported by probable cause. She also claims due process violations arising out of alleged procedural deficiencies in the administration of the two criminal charges against her (such as failure to conduct an initial appearance or preliminary hearing). In addition, she alleges that the taking of her cellular phone was a violation of her right to due process of law. Finally, she alleges that the defendants retaliated against her because she posted videos critical of the way the Lowndes County Sheriff's Department and its personnel arrested and detained her. She has set forth multiple claims for relief regarding these allegations, which the court lists below.[11]

---

[11] The plaintiff enumerates six claims for relief; however, she describes other claims for relief within her description of those six claims. The court will assign numbers to the plaintiff's claims for relief without regard to the plaintiff's numbering.

(1) Violation of the Fourth Amendment prohibition of search and seizure without probable cause regarding her arrest on the charge of intimidation of a witness on November 18, 2022 (brought under 42 U.S.C. § 1983 and naming defendants Jeff Edmondson, Emily Konoir, Mark McGarity, and Lowndes County).

(2) Retaliation (in the form of charges of intimidation and retaliation) against the plaintiff for recording the traffic stop of August 24, 2018, for posting the videos on YouTube with commentary critical of the Lowndes County Sheriff's Department and the law enforcement personnel involved (brought under 42 U.S.C. § 1983 and naming defendants Jeff Edmondson, Emily Konoir, Mark McGarity, and Lowndes County).

(3) Violation of the Fourth Amendment by arresting and detaining her – and seizing her cellular phone – without probable cause (during her arrest arising out of the traffic stop on August 24, 2022) (brought under 42 U.S.C. § 1983 and naming defendants Jeff Edmondson, Emily Konoir, Mark McGarity, Lance Luckey, and Lowndes County).

(4) Violation of due process (as to the retaliation charge) by failing to transport her to the Grand Jury proceedings or to a preliminary hearing (brought under 42 U.S.C. § 1983 and naming Jeff Edmondson and Sheriff Eddie Hawkins).

(5) Conspiracy among all defendants to arrest and detain Bumgardner for exercising her First Amendment rights (posting the YouTube videos) and Fourth Amendment rights (brought under 42 U.S.C. § 1985).

(6) Conspiracy for failure to prevent wrongs (preventing or stopping Jeff Edmondson from violating Bumgardner's rights under the Fourth Amendment, the First Amendment, and the right to due process) (brought under 42 U.S.C. § 1985 and naming Eddie Hawkins, Emily Konoir, Lance Luckey, Mark McGarity, Colleen Huson, and Lowndes County).

  (7) Malicious prosecution (subjecting Bumgardner to judicial proceedings without probable cause by falsely accusing the plaintiff of criminal activity, failing to conduct a preliminary hearing, and indicting the plaintiff for retaliation, dismissing the charge, re-indicting for the same charge, then dismissing the charge again) (brought under 42 U.S.C. § 1983).

**Probable Cause Existed to Arrest and Detain Bumgardner  
for Both Intimidation of a Witness and Retaliation  
Against a Public Servant**

  Bumgardner argues that probable cause did not exist to arrest and detain her during the traffic stop of August 24, 2022 – or for the attack of November 18, 2022, on Tonya Blanton – or for the charge of retaliation indicted on January 30, 2023. The court finds multiple flaws in her arguments. First, her continued detention was, ultimately, based upon violation of the terms of her release on bond for the sale of methamphetamine charge – *not* directly upon the facts of her arrests or the charges arising out of those arrests. The court notes that the terms for release on bond always require the defendant to avoid arrest on new charges, and, though she challenges the basis for the new charges, she acknowledges that she was, indeed, arrested on those charges.

  As discussed below, Bumgardner has not alleged facts sufficient to challenge her arrest arising out of the traffic stop. In addition, her allegations and supporting documents show that probable cause, indeed, existed to support her November 22, 2022, arrest arising out of the alleged attack on Ms. Blanton (which led to the revocation of her release on bond for the methamphetamine charges). After her bond was revoked on November 22, her continued detention was based on her methamphetamine charges – *not* the new charges (intimidation and retaliation). Finally, law enforcement statements established probable cause to support the charge of retaliation against a public servant, and the plaintiff has alleged no harm from the retaliation charge.

**The Plaintiff's Factual Allegations and Supporting Documents
Regarding the August 24, 2022, Traffic Stop Fail to Establish That Her
Resulting Arrest Was Not Supported by Probable Cause**

Bumgardner's allegations regarding her arrest resulting from the August 24, 2022, traffic stop are skeletal. She alleges that she "participated" in the traffic stop, which was "initiated by Jeff Edmondson, Lance Luckey, and Mark McGarity." Doc. 24-1, p. 3. She further alleges that she was "unlawfully searched, seized, and arrested and her cell phone was confiscated without a warrant or probable cause." *Id*. She also states that she "bonded out for about $200.00." *Id*.

Bumgardner does not, however, state: (1) whether she was the driver or a passenger; (2) whether the vehicle belonged to her; (3) the reason given for the traffic stop; (4) the reason given for her arrest; (5) the charge giving rise to her arrest; (6) the reason given for the confiscation of her phone; (7) whether her phone was ever returned to her; (8) whether she had an initial appearance; (9) whether she was jailed for the offense; or (10) when she bonded out. Nor does she describe the search itself, including whether the search involved her vehicle, her person, her belongings, or some combination of these.

Bumgardner simply has not provided enough facts for the court to determine whether probable cause existed to stop the vehicle, conduct the searches, arrest her, detain her, or confiscate her cell phone, despite the opportunity to do so. Such bare allegations cannot support her claims regarding the August 24, 2022, arrest because "[a] plaintiff may not … plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought." *See Buckenberger v. Reed*, 342 F. App'x 58, 64 (5th Cir. 2009) (quoting *Arnaud v. Odom*, 870 F.2d 304, 307 (5th Cir. 1989)); *see also Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991) (dismissing allegation asserting, "in essence, merely that these defendants conspired to rig the jury and to deprive him of a fair trial" for failure to allege specific operative facts.) For these reasons, the

plaintiff's allegations regarding the propriety of the August 24, 2022, traffic stop, arrest, and seizure of her cellular phone must be dismissed without prejudice.[12]

### Taking of Property Without Due Process of Law

Bumgardner also claims that the defendants took her property (a cellular phone) without due process of law. As discussed above, she has not alleged facts sufficient to support this claim. However, even if she had, the claim is foreclosed under the *Parratt/Hudson* doctrine, as there is an adequate remedy at state law for the taking of her property.

The random and unauthorized deprivation of a detainee's property by a state actor does not violate his due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the *Parratt/Hudson* doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional [–] or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 F. App'x. 731 (5th Cir. 2011). Thus, as to the plaintiff's claim regarding the taking of her property, the court must first determine whether Mississippi law affords her an adequate post-deprivation remedy for her loss.

---

[12] The plaintiff has not stated whether a judicial officer or the Sheriff set the ~$200 bond. If a judicial officer (rather than the Sheriff) set the bond, that constitutes a finding of probable cause to arrest and detain the plaintiff. Sheriffs in Mississippi may set bond or release suspects on their own recognizance in misdemeanor cases – and for felonies only in "emergency circumstances." *See* Miss. Code Ann. § 19-25-67.

- 11 -

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> > (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

MISS. CODE ANN. § 11-46-9(1)(m).

At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *See Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss. May 17, 2012) (*citing Johnson v. King*, 85 So.3d 307 (Miss. Ct. App. 2012)). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in *Johnson* are legally indistinguishable from those in the instant case. The officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson*, 85 So.3d at 311-312. Johnson had purchased the mug from the canteen with his own money. *Id.* The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into

- 12 -

contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id*. Those facts mirror the facts in the present case. As such, the plaintiff in this case has an adequate remedy under state law, and her claims for the taking of her property without due process of law must be dismissed.

### Probable Cause Supported the Charge of Intimidation of a Witness

The plaintiff alleges that her November 22, 2022, arrest for intimidation of a witness was not supported by probable cause. As set forth above, however, the Justice Court Judge had more than sufficient evidence to find probable cause to arrest and detain Bumgardner on that charge. In addition, her arrest on the witness intimidation charge was sufficient to revoke her $3,700 bond on the charges of sale of methamphetamine – a revocation resulting in her detention through the completion of her criminal trial and July 6, 2023, transfer into MDOC custody.

Probable cause to arrest exists when, at the time of arrest, the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a police officer of reasonable caution to believe an offense has been or is being committed.[13] *See Duckett v. Cedar Park,* 950 F.2d 272, 278 (5th Cir. 1992) (citing *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995)). The probable cause requirement does not require any showing that such a belief is correct or more likely true than false. *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). A sheriff executing an arrest warrant is not required by the Constitution to independently investigate every claim of innocence. *Id*. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would

---

[13] Whether a court is determining probable cause to issue a warrant prior to arrest – or deciding whether probable cause exists to hold a defendant after a warrantless arrest – the standard is the same. *Baker v. McCollan*, 443 U.S. 137, 143, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker*, 443 U.S. at 145. A person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not entitled to a separate judicial determination that probable cause exists to detain him prior to trial. *Id.* at 144.

The Justice Court Judge in this case issued a warrant for Bumgardner's arrest for intimidation based upon a police report supported by: (1) a report to the police by telephone from the victim; (2) three witness statements; (3) photographs of the victim's physical injury (contusion on her leg); and (4) an agent's physical examination of the injury (both visual and by palpation). Doc. 8, p. 5; Doc. 24-1, p. 5; Doc. 19, p. 2. The evidence did not consist solely of Investigator Edmondson's testimony; rather it came from multiple sources and included photographs of injuries sustained. The arrest warrant established probable cause that the plaintiff committed the crime by assaulting Ms. Blanton.

In addition, after Bumgardner's arrest for intimidation – pursuant to the warrant – a Grand Jury issued an Indictment for the charge. Doc. 24-1, p. 5. The Indictment likewise establishes probable cause that she committed the crime. Bumgardner claims that Edmonson orchestrated an elaborate scheme to "frame" her for the assault, but she has presented no factual allegations or documentary evidence at all to support that contention. In the absence of such allegations, it is clear that probable cause existed to both arrest and detain Bumgardner for the charge of witness intimidation. As Bumgardner's arrest for intimidation was supported by probable cause, the state court properly revoked her bond on the methamphetamine charges – which, in turn, validates her detention from her arrest through her criminal trial and subsequent transfer to MDOC custody.

### Probable Cause Existed to Support the Charge of Retaliation Against a Public Servant

Probable cause likewise existed to support Bumgardner's charge for retaliation against a public servant, as two law enforcement officers (Kevin Pevey and Marie Halthorn) provided statements that

she threatened to kill Investigator Edmondson. Doc. 8, p. 8. It is not clear how that charge was initially brought (whether by arrest warrant or indictment); however, on January 30, 2023, a Grand Jury returned an Indictment against her for that charge.[14] The Indictment is sufficient to establish probable cause to arrest and detain her, as "the return of an indictment that is 'fair upon its face' by a 'properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.' *Kaley v. United States*, 571 U.S. 320, 328 (2014) (citation omitted). No further statement is required." *United States v. Gibson*, No. 22-40313, 2025 WL 1355422, at *2 (5th Cir. May 9, 2025). Bumgardner has not identified any defects in the Indictment. She essentially argues, "I did not do it," which is the civil case analog of pleading "not guilty." Again, such a bare allegation cannot sustain a constitutional claim under 42 U.S.C. § 1983. *See Young v. Biggers*, *supra*.

In any event, the plaintiff cannot show any harm from the retaliation charge. At the time she was indicted, she was already in pretrial detention on the sale of methamphetamine charge, and she remained so until her transfer to MDOC custody after her jury trial and conviction. Hence, she did not suffer from incarceration on the retaliation charge; she would have been in custody with or without that charge. In addition, the retaliation charge was ultimately dismissed, and Bumgardner cannot prove her allegation regarding want of probable cause to support her retaliation charge without showing harm. Thus, her claim will be dismissed for that reason, as well.

---

[14] The plaintiff alleges that she was indicted without notice, initial appearance, or preliminary hearing; however, in this case, such allegations do not state a valid claim. First, Grand Jury proceedings are *ex parte* in nature; as such, the plaintiff was not entitled to notice. *Berger v. United States,* 295 U.S. 78, 88 (1935). In addition, it is common for the State to initiate an investigation, present evidence to a Grand Jury, obtain an Indictment, *then* obtain a warrant to arrest the suspect. Indictment is merely one way to initiate adversarial criminal proceedings; other ways include "formal charge, preliminary hearing, … information, or arraignment." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198, 128 S. Ct. 2578, 2583, 171 L. Ed. 2d 366 (2008) (internal quotations omitted). Hence, in this instance, the Indictment (rather than a formal charge and warrant) established probable cause for the arrest.

### Allegations Regarding Retaliation Against Bumgardner for Posting Videos Online Are Without Substantive Merit

The plaintiff alleges that the defendants prosecuted two criminal charges (intimidation of a witness and retaliation against a public servant) against her without probable cause in retaliation for her having posted on YouTube bodycam video and commentary critical of the Lowndes County Sheriff's Department, the Sheriff, and various officers. This claim is without factual support. First, as discussed above, probable cause existed to support the prosecution of both crimes. In addition, her allegations do not establish a chronology from which the court may infer retaliation.

Law enforcement officials may not retaliate against arrestees for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every adverse action officials take regarding arrestees. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive[,] the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996).

A prisoner seeking to establish a retaliation claim must also show that the law enforcement official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 2010 WL 706515, at *3 (S.D. Miss. Feb. 22, 2010) (citing *Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006)). "A single incident involving a minor sanction is insufficient to prove retaliation." *Davis v. Kelly*, 2012 WL 3544865, at *4 (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)) (additional citation omitted). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris*, 449 F.3d at 685.

In this case, Bumgardner must prove that she engaged in constitutionally protected activity (expressing her grievances online), faced significant adverse consequences (unfounded criminal prosecution), and that such action was taken "in an effort to chill [her] access to the courts or to punish [her] for having [exercised her rights]." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir. 1994), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir. 1987). The showing in such cases must be more than the arrestee's "personal belief that [s]he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. For instance, in *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.*

The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Id.*

Arrestees routinely complain about law enforcement actions on an ongoing basis, for any number of reasons. As such, it is not uncommon for an arrestee to complain or file a grievance, then get arrested sometime thereafter. Thus, to avoid turning numerous arrests of repeat offenders into claims of retaliation, courts insist upon additional allegations or evidence to substantiate such claims – such as issuing threats of disciplinary action for filing future complaints, a law enforcement officer threatening arrestees, perpetrating unprovoked acts of violence against them – or wholly fabricating charges against them. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. Jan. 11, 2010) (report and recommendation later adopted by district judge).

In this case, the plaintiff's allegations do not match her claims – because the charges against her originate from people *other than* her alleged antagonist, Jeff Edmonson. In addition, the intimidation charge is supported by documentary evidence (statements and photographs) of physical injury. Further, both law enforcement officers and civilians provided the statements. The plaintiff, without supporting factual allegations or documentary proof, alleges that Edmonson orchestrated the charges against her by convincing all those involved to make false statements. Again, she offers no factual allegations to support these claims, and bare allegations are insufficient to support a valid § 1983 claim. For these reasons, the plaintiff's claim of retaliation must be dismissed with prejudice for failure to state a claim upon which relief could be granted.

**Conclusion**

Ultimately, all of the plaintiff's allegations must be dismissed for failure to state a claim upon which relief could be granted. Her allegations in claims (1), (3), and (7) that the defendants jud not have probable cause to arrest or detain her will be dismissed because, as discussed above, the defendants, indeed, had probable cause. Her allegations in claims (5) and (6) that the defendants conspired to violate her rights (as alleged in her other claims) must be dismissed because, as discussed, their actions did not violate her rights. Bumgardner's allegations in claim (4) that the defendants violated her right to due process because the defendants did not transport her to Grand Jury proceedings or to a preliminary hearing must be dismissed because she was not entitled to attend Grand Jury proceedings, and, as she was first indicted as to the retaliation charge, she was not entitled to a preliminary hearing on that charge. Her allegations in claim (2) that the defendants retaliated against her for recording them and posting the videos on YouTube must be dismissed because, as discussed, she did not allege facts sufficient to support that claim. Her allegations regarding the confiscation of her cellular phone must be dismissed because, under the *Parratt/Hudson* doctrine, a state law remedy is available to adjudicate her claim.

In sum, all of the plaintiff's allegations must be dismissed for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 5th day of February, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE